Rasco 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-134-CV





JERRY L. RASCO AND DONNA T. RASCO,



 
 APPELLANTS


vs.





HUFFY CORPORATION, HUFFY SERVICE FIRST,


AND WILLIAM S. BOYCE,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 493,688, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 




 Jerry L. and Donna T. Rasco, appellants, brought suit against Huffy Corporation,
Huffy Service First, William S. Boyce (collectively, "defendants"), appellees, and others alleging
violations of the Texas Free Enterprise and Antitrust Act of 1983 ("the Texas Antitrust Act"),
Tex. Bus. & Com. Code Ann. §§ 15.01-.52 (West 1987 & Supp. 1994), common law boycott,
and tortious interference with existing and prospective business relationships. (1) Defendants moved
for summary judgment on all causes of action. The trial court granted the motion and rendered
a final judgment that the Rascos take nothing by their suit. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 In 1972 the Rascos opened a store in Austin called "The Pedaler," through which
they sold bicycles and offered bicycle repair services to the public. The Pedaler also assembled
new bicycles for KMart, Best Products, and Joske's. Although The Pedaler went out of business
in 1974, the Rascos continued to assemble bicycles in their home for KMart and Best Products. 
In 1978 they began doing business as "Bicycle Systems." In 1980, as Bicycle Systems, they began
performing assembly and warranty repair services for one of the Target stores in Austin. Bicycle
Systems' business expanded to include another Target store in Austin in 1981 and two KMart
stores in the Temple-Killeen area in 1983.

 In 1983 Target and Huffy Service First ("HSF") entered into a national contract
for HSF to provide assembly and repair work for Target. Bicycle Systems' services were
discontinued at the Target stores until 1984, when two Targets in Austin and one Target in Waco
requested that Bicycle Systems provide their assembly and repair services. In 1986 Bicycle
Systems also began servicing two Target stores in San Antonio.

 In 1986 the Waco and San Antonio Target stores discontinued the use of Bicycle
Systems' services. In 1988 the Austin Target stores also stopped using the services of Bicycle
Systems. Bicycle Systems was unable to replace the Target accounts and was forced out of
business.

 The Rascos filed suit on November 13, 1990, for violations of the Texas Antitrust
Act, common law boycott, and tortious interference with existing and prospective business
relationships. In their brief to this Court, they describe their contentions as follows:


(1) HSF and Target entered into an agreement and combination (2) pursuant to
which HSF granted hidden discounts to Target and other mass merchandisers, (3) 
in exchange for which Target ceased doing business with all independent
companies, including Bicycle Systems, providing in-store assembly and repair of
bicycles and other products, and (4) through similar contracts and combinations
with other mass merchandisers which amount to restraints of trade, boycott, and
use of monopoly power, HSF has excluded competition and controlled the pricing
structure for sales of in-store assembly, repair and warranty services to mass
merchandising retailers in Texas.


The Rascos further assert that

[d]ocuments produced through discovery establish (1) that HSF performed work
or offered to perform it cheaper than Bicycle Systems in order to eliminate Bicycle
Systems from the business of servicing Target stores or other mass merchandisers,
and (2) that HSF went up on its price after eliminating Bicycle Systems as a
competitor.


The Rascos contend that HSF exercised its dominance in the market to restrict competition by
Bicycle Systems and others.

 Defendants filed a motion for summary judgment, along with supporting summary
judgment evidence, on September 24, 1992. Their motion addressed all of the causes of action
asserted by the Rascos. As to some of the causes of action, defendants asserted several
independent grounds for summary judgment.

 First, defendants alleged that there was no contract, combination, or conspiracy in
restraint of trade. In support of this allegation, they asserted that (1) no boycott or exclusive
arrangement existed; (2) even if a boycott or exclusive arrangement existed, changing exclusive
contractors is not a violation of the antitrust laws; (3) there was no harm to competition; and (4)
the Rascos had not suffered an antitrust injury.

 Second, defendants alleged that the Rascos had no claim for monopoly or attempt
to monopolize. In support of this, they asserted that (1) there existed no monopoly or conspiracy
or attempt to monopolize, and (2) the Rascos had not suffered an antitrust injury.

 Third, defendants alleged that the Rascos had no exclusive-dealing claim. In
support of this, they asserted that the claimed violation concerned services provided by HSF and
that section 15.05(c) of the Texas Antitrust Act does not apply to services. (2)

 Fourth, defendants argued that the conduct alleged by the Rascos did not make
economic sense. Defendants contended that it did not make economic sense for Target, a
consumer of bicycle repair and assembly services, to conspire to create a monopoly in HSF.

 Fifth, defendants argued that there was no common-law cause of action for boycott. 
Accordingly, they asserted the Rascos' common-law claim of boycott was without merit as a
matter of law.

 Sixth, defendants argued that they did not tortiously interfere with the Rascos'
business relations. They asserted that the Rascos had no existing or prospective contract with
Target, that HSF's actions with respect to Target were motivated purely by a legitimate business
interest, and that HSF acted to protect a legitimate business interest and did not employ any means
beyond the bounds of fair competition.

 Finally, defendants argued that the Rascos' common-law boycott claim and tortious-interference-with-business-relations claims were barred by the statute of limitations.

 The Rascos responded to the motion on December 9, by asserting that material
issues of fact existed as to their antitrust claims and by filing supporting summary judgment
evidence. Also included in their response was a motion seeking additional time to complete
discovery. Defendants filed numerous objections to the Rascos' summary judgment evidence on
December 15. The objections were that some of the summary judgment evidence was hearsay,
not the best evidence, conclusory, speculative, and too general and vague.

 A hearing on the motion for summary judgment was held on December 17 and 23,
1992. On December 21, defendants filed supplemental objections to the Rascos' summary
judgment evidence, objecting that certain summary judgment evidence was not timely and, in
addition, was hearsay, conclusory, and not the best evidence. On December 30, the Rascos filed
a supplemental response to the motion for summary judgment, attaching the summary judgment
evidence apparently objected to by defendants on December 21. Also on December 30, the
Rascos filed a response to defendants' original objections to their summary judgment evidence.

 The final judgment, signed by the trial court on January 14, sustains defendants'
objections to the Rascos' summary judgment evidence, denies the Rascos' motion for additional
time to complete discovery, and grants defendants' motion for summary judgment. The judgment
does not specify the grounds on which the summary judgment was granted.


DISCUSSION


 On appeal, the Rascos bring two points of error. In their first point of error, they
contend that the trial court erred in granting summary judgment in favor of Huffy and HSF. In
their second point of error, they argue that the trial court erred in failing to grant a continuance
of the summary judgment hearing to allow completion of discovery.


1. Continuance

 The Rascos complain of the trial court's refusal to grant a continuance of the
hearing on the motion for summary judgment in order to allow the Rascos to complete discovery. 
They point out that antitrust cases involve complex issues requiring a great deal of discovery and
assert that Huffy and HSF "were not entirely cooperative" in the discovery process. The Rascos
argue that they could not present facts essential to justify their opposition to the motion for
summary judgment. See Tex. R. Civ. P. 166a(g). Accordingly, they assert that the trial court
abused its discretion in refusing to grant a continuance of the summary judgment hearing. We
disagree.

 The Rascos filed suit on November 13, 1990. The transcript shows that the Rascos
conducted some discovery by sending interrogatories, requests for production, and requests for
admissions to defendants. However, the Rascos apparently never noticed the depositions of
Huffy, HSF, or Boyce. (3) Defendants' motion for summary judgment was filed on September 24,
1992. The hearing on the motion apparently was set initially for October 28, but was
subsequently rescheduled for November 24. On October 5, the Rascos filed a motion for
continuance of the summary judgment hearing and a motion for pretrial conference. Although the
record contains a notice that a hearing on the Rascos' motion was set for November 12, the record
contains no order on that motion. The hearing on the motion for summary judgment however
apparently was again reset for December 17 and 23. On December 9, the Rascos filed their
response to defendants' motion and an alternative motion for additional time to complete
discovery. The motion for time to complete discovery was denied in the final judgment signed
by the trial judge on January 14, 1993.

 The granting or denial of a motion for continuance is within the trial court's sound
discretion, and will not be disturbed on appeal unless the record discloses a clear abuse of
discretion. State v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988); Villegas v.
Carter, 711 S.W.2d 624, 626 (Tex. 1986). The failure of a litigant to diligently utilize the rules
of civil procedure for discovery purposes will not authorizemuch less mandatethe granting of
a continuance. Wood Oil Distrib., 751 S.W.2d at 865 (quoting Fritsch v. J.M. English Truck
Line, Inc., 246 S.W.2d 856, 858-59 (Tex. 1952)).

 The Rascos' suit had been on file for almost two years when the motion for
summary judgment was filed. Although the Rascos complain that defendants had not been
cooperative in discovery, nothing in the record indicates that the Rascos filed any motions to
compel discovery or even that they set defendants' numerous discovery objections for hearing. 
Further, the record does not show that the Rascos sought any additional discovery during the three
months between the filing of the motion for summary judgment and the hearing on the motion. 
Under these circumstances, we cannot say that the trial court clearly abused its discretion in
denying the Rascos' motion for continuance. We overrule the Rascos' second point of error.


2. Waiver

 a. Claims Against Boyce

 The Rascos do not bring forward a point of error complaining of the summary
judgment as to Boyce. The Rascos' first point of error, complaining of the summary judgment,
is limited to Huffy and HSF. Boyce is not included within the point of error, nor do any of the
Rascos' briefs make any arguments concerning Boyce. (4) Therefore, any error in granting the
summary judgment as to Boyce has been waived. See Parks v. Underwood, 280 S.W.2d 320, 324
(Tex. Civ. App.Dallas 1955, writ ref'd n.r.e.).

 b. Common-Law Causes of Action

 The Rascos' first point of error complains generally of the trial court's granting of
summary judgment. A point of error complaining that the trial court erred in granting a motion
for summary judgment is sufficient to comply with the rules of appellate procedure requiring
specificity in points of error. Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970);
see Tex. R. App. P. 74(d). That is, such a point is sufficient to allow argument as to all possible
grounds upon which a summary judgment should have been denied. Malooly Bros., 461 S.W.2d
at 121.

 In their briefs to this Court, the Rascos do not discuss the common-law claims
alleged in their petition and make no argument that the trial court erred in granting summary
judgment as to those claims. (5) Even under a broad Malooly Brothers point of error, causes of
action upon which summary judgment was granted that are not argued are waived. Natividad v.
Alexsis, Inc., 833 S.W.2d 545, 549 (Tex. App.El Paso 1992, writ granted); A.C. Collins Ford,
Inc. v. Ford Motor Co., 807 S.W.2d 755, 760 (Tex. App.El Paso 1990, writ denied); see
Rodriguez v. Morgan, 584 S.W.2d 558, 559 (Tex. Civ. App.Austin 1979, writ ref'd n.r.e.). 
Therefore, any error in granting the summary judgment as to the Rascos' common-law claims of
boycott and tortious interference with business relationships has been waived.

 c. Objections to Summary Judgment Evidence

 In the Rascos' original brief to this Court, no complaint was made about the trial
court's ruling sustaining defendants' objections to portions of the Rascos' summary judgment
evidence. In fact, the Rascos supported their argument that summary judgment was improper by
references to this excluded evidence. Defendants, in their brief, noted that the ruling was not
challenged and asserted that the Rascos could not rely on this evidence in their appeal. In their
reply brief, the Rascos maintain that no argument was heard and no ruling was made on the
objections at the summary judgment hearing. The Rascos assert that the trial court announced that
it was granting the motion for summary judgment at the hearing, and that it could not later sustain
the objections. The Rascos ask this Court to liberally construe their brief as challenging any
ruling as to the objections; they argue that the evidence was admissible and should be considered.

 We construe the Rascos' first point of error as complaining of the trial court's
actions in granting the summary judgment. The point of error does not complain of the trial
court's action in sustaining the objections to the summary judgment evidence. Further, the
Rascos' arguments under their first point of error make no mention of the trial court's ruling on
the summary judgment evidence. Grounds of error not asserted by points of error or argument
are waived. San Jacinto River Auth. v. Duke, 783 S.W.2d 209 (Tex. 1990). Assignments of
error must be set forth in an appellant's original brief, and assignments contained in a reply brief
cannot be considered. Krumb v. Porter, 152 S.W.2d 495, 496-97 (Tex. Civ. App.San Antonio
1941, writ ref'd); Brentwood Fin. Corp. v. Lamprecht, 736 S.W.2d 836, 846 n.3, 847 (Tex.
App.San Antonio 1987, writ ref'd n.r.e.); Smith v. Hues, 540 S.W.2d 485, 489 (Tex. Civ.
App.Houston [14th Dist.] 1976, writ ref'd n.r.e.). A court of appeals may not reverse a
judgment in the absence of properly assigned error. San Jacinto River Auth., 783 S.W.2d at 210;
Krumb, 152 S.W.2d at 496. The Rascos did not assign as error the trial court's ruling on the
summary judgment evidence. Therefore, any error in such ruling has been waived. We will not
consider the summary judgment evidence to which defendants' objections were sustained.


3. Motion For Summary Judgment

 Under their first point of error, the Rascos argue that material issues of fact existed
as to their statutory antitrust claims against Huffy and HSF. They argue that Huffy and HSF
unreasonably restrained trade and were guilty of boycott, monopoly, and attempted monopoly of
the market for assembly and service of bicycles and other products sold by mass merchandisers
in Texas, in violation of the Texas Antitrust Act. See Tex. Bus. & Com. Code Ann. §§ 15.01-.40.

 For a defendant to be entitled to summary judgment, it must disprove, as a matter
of law, one of the essential elements of each of a plaintiff's causes of action. Lear Siegler, Inc.
v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). The defendant, as movant, has the burden of
showing that there is no genuine issue of material fact and that it is, therefore, entitled to judgment
as a matter of law. Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
In deciding whether there is a disputed material fact issue precluding summary judgment, evidence
favorable to the plaintiff, as non-movant, will be taken as true. Id. Every reasonable inference
must be indulged, and any doubts resolved, in the plaintiff's favor. Id.

 The Rascos seem to assert that HSF unreasonably restrained trade by entering into
a national contract with Target in 1983. (6) They allege primarily that the individual Target stores
were "forced" into using HSF and that HSF required Target to use its services in all its stores
nationwide. The Rascos do not complain of HSF's actions with respect to any other specific
retailer.

 The Rascos claim that HSF offered Target substantial discounts and rebates to enter
into the contract. They claim that "such discounts, rebates, and `non-standard' pricing constituted
the sole reason for Target's switching to HSF and ceasing to do business with Bicycle Systems
and other independent service companies." (7) The Rascos assert that they were forced out of
business because they could not replace the Target accounts. (8)

 Defendants' summary judgment evidence established that HSF and Target entered
into a national contract in 1983. Huffy was not a party to the contract and never offered Target
any incentives, including discounting its product line, to induce it into entering the contract with
HSF. Although HSF is a division of Huffy, it operates its business independently of Huffy. The
Rascos did not offer any controverting summary judgment evidence to this proof.

 Defendants' evidence also established conclusively that the contract did not require
Target to use HSF exclusively and that Target could opt out of the contract without cause on sixty
days' notice. Target also had the option of adding to or deleting from the list of individual stores
for which service was to be provided by HSF. Rasco, in his deposition, testified that the
individual Target store managers "had no choice" but to discontinue using his services. He
acknowledged, however, that the reason they had no choice was because of orders by Target's
upper-level management. The evidence also showed that Target opted out of the contract on
several occasions to allow other companies to service some of its stores, albeit not in Texas.

 Finally, the defendants' summary judgment evidence established that only a small
amount of capital, equipment, training, and experience are required to enter into the bicycle
assembly and repair market. In other words, there exist few, if any, barriers to entry into the
market. Again, the Rascos did not offer any controverting summary judgment evidence to this
proof.

 The Texas Antitrust Act is modeled on both the Sherman Antitrust Act and the
Clayton Act. Caller-Times Publishing Co. v. Triad Communications, Inc., 826 S.W.2d 576, 580
(Tex. 1992). It provides that it is to be interpreted in harmony with federal judicial interpretations
of comparable federal laws. Tex. Bus. & Com. Code Ann. § 15.04.

 The Rascos' suit for damages was brought pursuant to § 15.21(a) of the Texas
Antitrust Act. That section authorizes a suit to recover damages by "any person . . . whose
business or property has been injured by reason of any conduct declared unlawful in Subsection
(a), (b), or (c) of Section 15.05 of this Act . . ." Tex. Bus. & Com. Code Ann. § 15.21(a)(1). 
The Clayton Act, upon which the Texas act was based, contains a similar provision, 15 U.S.C.
§ 15, which the United States Supreme Court has interpreted as requiring proof of "antitrust
injury." See Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990); Brunswick
Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). In their motion for summary
judgment, Huffy and HSF asserted that the Rascos have not suffered an antitrust injury. (9)

 In order to establish antitrust injury, a plaintiff "must prove more than injury
causally linked to an illegal presence in the market." Brunswick, 429 U.S. at 489. Antitrust
injury is instead an "injury of the type the antitrust laws were intended to prevent and that flows
from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive
effect either of the violation or of anticompetitive acts made possible by the violation." Id. 
Antitrust injury was further explained in Atlantic Richfield Co. v. USA Petroleum Co.:


When a firm . . . lowers prices but maintains them above predatory levels, the
business lost by rivals cannot be viewed as an `anticompetitive' consequence of the
claimed violation. A firm complaining about the harm it suffers from
nonpredatory price competition `is really claiming that it [is] unable to raise
prices.' This is not antitrust injury; indeed, `cutting prices in order to increase
business often is the very essence of competition.' The antitrust laws were enacted
for `the protection of competition, not competitors.' `To hold that the antitrust
laws protect competitors from the loss of profits due to [nonpredatory] price
competition would, in effect, render illegal any decision by a firm to cut prices in
order to increase market share.'



495 U.S. at 337-38 (citations omitted).

 In their original petition, the Rascos made no claim of predatory pricing. In their
response to the motion for summary judgment, they alleged "discriminatory" pricing was granted
to Target and also alleged that "HSF performed work or offered to perform it cheaper than
Bicycle Systems in order to eliminate Bicycle Systems from the business of servicing Target stores
. . . and has gone up on its price since eliminating Rasco as a competitor." We do not believe that
the Rascos intended by these statements to allege predatory pricing by HSF. Nowhere in their
petition or in their responses to the motion for summary judgment do the Rascos assert that HSF
lowered its prices below HSF's cost, a necessary element of predatory pricing. Caller-Times
Publishing Co., 826 S.W.2d at 588.

 The Rascos allege their injury resulted from HSF's offers of lower prices to
Target. (10) A non-predatory lowering of prices, however, is not an anticompetitive practice. 
Atlantic Richfield Co., 495 U.S. at 338. The injury alleged by the Rascos does not, therefore,
flow from an anti-competitive practice; it is not the kind of injury the antitrust laws were designed
to prevent.

 If we are wrong in this conclusion, and the Rascos did attempt to raise a material
issue of fact regarding predatory pricing, the judgment must nevertheless be affirmed for lack of
antitrust injury. Predatory pricing exists where:


(1) the seller has an objectively reasonable expectation of recouping its losses due
to the alleged predatory pricing by charging higher prices later, that is, the
predatory pricing is economically feasible; and (2)(a) the price charged is below
average variable cost; or (b)(i) there are substantial barriers to market entry; (ii)
the seller is charging a price below its short-run profit-maximizing price and its
average total cost; and (iii) the benefits of the seller's price depended on its
tendency to discipline or eliminate competition and thereby enhance the firm's
long-term ability to reap the benefits of monopoly power.



Caller-Times Publishing Co., 826 S.W.2d at 588. The first element of the Caller-Times test
requires that predatory pricing be economically feasible; that is, the seller must have an
objectively reasonable expectation of recouping its losses by charging higher prices later. Id. at
581.


The seller will not have an objectively reasonable expectation of recouping its
losses unless the structure of the relevant market will permit the seller to recoup
its losses from predatory pricing. When a company charges prices that are above
a competitive price in a market that does not have significant barriers to entry, new
competition enters the market and prices must be lowered to maintain market
position. Therefore, market structure can make recoupment impossible. `Only
if market structure makes recoupment feasible need a court inquire into the relation
between price and cost.'



Id. at 582 (citations omitted).

 The summary judgment evidence conclusively established that there were few, if
any, barriers to entry into the bicycle assembly and repair market. Therefore, HSF could not
have had an objectively reasonable expectation of recouping its losses from predatory pricing by
charging higher prices later. Furthermore, since the market structure does not make recoupment
feasible, no inquiry into the relation between price and cost was needed. Thus, the summary
judgment evidence established as a matter of law that the Rascos had suffered no antitrust injury. 
Accordingly, there were no material issues of fact and summary judgment was proper as to the
Rascos' antitrust claims.

 We also conclude that the summary judgment evidence established, as a matter of
law, that there was no contract, combination, or conspiracy in restraint of trade. The contract did
not require Target to use HSF's services exclusively and provided that any or all of the Target
stores could be opted out of the contract on written notice. As a matter of law, the contract did
not impose any unreasonable restraints on trade.

 Finally, we conclude that the summary judgment evidence established, as a matter
of law, that there was no monopoly or attempt to monopolize. Monopoly power is the power to
exclude competition or control prices. United States v. E.I. du Pont de Nemours, 351 U.S. 377,
391 (1956). Where there are no significant barriers to entry into the market, any attempt to raise
prices above the competitive level will lure into the market new competitors able and willing to
offer their services for less. Caller-Times Publishing Co., 826 S.W.2d at 582. There is no power
to control prices and thus no monopoly power where there are no barriers to entry into the
market. The uncontroverted evidence established that only a small amount of capital, equipment,
training, and experience is required to enter into the bicycle assembly and repair market. 
Therefore, since there are essentially no barriers to entry, defendants could not control the prices
in the market. We overrule the Rascos' first point of error.




CONCLUSION


 The judgment of the district court is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and Kidd

Affirmed

Filed: January 19, 1994

Do Not Publish
1. The other defendants to the suit were Dayton Hudson Corporation, Dick Martin, Lee
Montgomery, Rudy Colmenero, Bill Gurten, Don Voorhees, and Jay Turner. Of these, the
Rascos nonsuited all but Dayton Hudson Corporation, in whose favor summary judgment was
granted on all causes of action. The Rascos initially appealed from the summary judgment as
to Dayton Hudson, but later moved this Court to dismiss that appeal. We dismissed the appeal
as to Dayton Hudson on May 19, 1993.
2. In their reply brief, the Rascos state that they made no separate exclusive-dealing claim
in the trial court and do not claim in this appeal that exclusive dealing exists.
3. Notices were, however, sent to depose Bruce Carroll, Dick Martin, Lee Montgomery,
and Bryan Schade on June 10, 1992, and Don Voorhees and Rudy Colmenero on June 12,
1992.
4. Defendants' brief pointed out that no points of error had been raised with regard to
Boyce. Nonetheless, the Rascos continued to make no mention of any error as to Boyce in
their reply brief and in their post-submission brief.
5. In their reply brief, the Rascos assert that their first point of error "comprehends all
elements of the antitrust violations alleged, and Bicycle Systems has addressed those elements
in this appeal." They go on to note that "[t]he only antitrust violations alleged in [their]
petition are (1) concert, combination, and conspiracy in unreasonable restraint of trade in the
relevant market, (2) monopolization, and (3) attempt and conspiracy to monopolize the
relevant market."
6. The Rascos do not clearly allege which of defendants' actions unreasonably restrained
trade. Their complaint seems to center around the contract between HSF and Target. 
However, the Target stores serviced by the Rascos were not initially included in the contract
and the Rascos continued servicing those stores until 1986 and 1988. The San Antonio stores
were added to the contract in 1986, and the Austin stores were added in 1988.
7. In their response to the motion for summary judgment, the Rascos asserted that "[t]he
rebates, nonstandard pricing, and discounts offered Target constitute illegal discriminatory
pricing, and represent an exercise of monopoly power by HSF which unreasonably restrained
trade and eliminated competition."
8. In their response to the motion for summary judgment, the Rascos asserted that "[t]he
types of accounts which were available to be serviced would not provide the volume necessary
to sustain an ongoing business even for a `Mom and Pop' service company."
9. The Rascos' original brief does not specifically address any of defendants' allegations,
but merely argues generally that there are material issues of fact as to each of their antitrust
claims that precluded summary judgment. For example, their original brief does not address
the absence of antitrust injury beyond asserting generally that they were injured by defendants'
actions. We conclude, therefore, that the Rascos have waived any error in basing the
summary judgment on an absence of antitrust injury, and summary judgment could be affirmed
on this basis. See Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989) (where
summary judgment does not specify the grounds on which it was granted, the appellant must
show each of the grounds alleged in the motion is insufficient to support the judgment). 
Nonetheless, in case we are in error as to this conclusion, we will address the merits of the
issue.
10. Attached to the Rascos' response to the motion for summary judgment was an
"addendum" in which the Rascos disputed many of the statements made in defendants' motion. 
With regard to the issue of antitrust injury, the Rascos asserted the following:


 Statement, [in HSF's motion for summary judgment], p. 14: Injury must flow from
some anticompetitive effect of the defendant's behavior.


 Fact: The grant of discriminatory pricing to Target, which is anticompetitive, has
directly injured the plaintiff by eliminating it from competition.


 . . .


 Statement, [in HSF's motion for summary judgment], p. 18: Plaintiffs suffered no
antitrust injury if monopoly caused prices to fall.


 Fact: Antitrust injury if a monopolist or near monopolist lowers prices in the short run
for the opportunity to raise them in the long run.